## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SIMON ARMIJO,

       Plaintiff,

v.                                          CV No. 14-362 JB/CG

RONY D. HAYES, et al.,

       Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on *State Defendants' Motion to Dismiss or Alternatively, Motion for Summary Judgment* ("Motion"), (Doc. 43), filed July 1, 2015; *Plaintiffs Response to Defend[a]nts Motio[n] to Dismiss and Alternative Motion for Summ[a]ry Judgment and Response to Failure to State a Claim* ("Response"), (Doc. 56), filed July 24, 2015; and *State Defendants' Reply to Plaintiff's Response to the Motion to Dismiss or Alternatively Motion for Summary Judgment* ("Reply"), (Doc. 61), filed August 6, 2015. United States District Judge James O. Browning referred this case to U.S. Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 4). The Court has considered the Motion, the Response, the Reply, and the relevant law. The Court has also heard the parties' oral argument on the Motion at a hearing on August 28, 2015. (Doc. 66). Because the Court finds that Defendants are not entitled to qualified immunity on all of Plaintiff's claims against them, the Court **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.      Factual and Procedural Background

This case arises from the search and seizure of Plaintiff's property in the Village of Magdalena, New Mexico on April 17, 2012, and Plaintiff's subsequent arrests. Plaintiff is a "qualified patient" under the Lynne and Erin Compassionate Use Act (the "Act"), N.M. STAT. §§ 26-2B-1–7 (2007), which allows him to legally possess certain amounts of marijuana. (Doc. 2 at 3, 4, 7; Doc. 66 at 2).[1]

In early 2012, Defendant Larry Cearley, Marshal for the Village of Magdalena, contacted the District Attorney's Office for the Seventh Judicial District of New Mexico with information regarding Plaintiff's past statements and activities, which suggested Plaintiff was engaging in production and distribution of marijuana not authorized by the Act. (Doc. 2 at 2; Doc. 43-1 at 1). Specifically, Defendant Cearley spoke with Defendant Ronny Hays of the District Attorney's office.[2] Defendant Cearley stated that, as Plaintiff's neighbor, he observed known drug users frequent Plaintiff's residence, a high volume of traffic in and out of the property for only short periods of time, and that Plaintiff continually ran his swamp cooler and air compressor throughout the year, even in the winter months. (Doc. 43-1 at 1–2).  Defendant Cearley also relayed a conversation he had with Plaintiff in which he alleges that Plaintiff asked whether Defendant Cearley thought a local power outage was a result of all the lights Plaintiff used for Plaintiff's marijuana plants. (*Id.* at 2). During that conversation, Plaintiff also

---

[1] Plaintiff's *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983* is verified, (*see* Doc. 2 at 6), and therefore may be treated as an affidavit for purposes of summary judgment. *Conway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988).
[2] Defendant Ronny Hays' name is spelled "Rony Hayes" in Plaintiff's Complaint and in the caption of this case. This is apparently not the correct spelling, as Defendant Hays' name is spelled "Ronny Hays" in his Motion and the supporting documents submitted to the Court. The Court will use the spelling provided by Defendant Hays in his Motion.

disclosed that he had a medical marijuana permit issued to him by the New Mexico Department of Health ("NMDOH"). (*Id.*).

This information was used in Defendant Hays' *Affidavit for Search Warrant* (the "Affidavit") submitted in support of an application for a search warrant of Plaintiff's property. (Doc. 43-1). The search warrant was issued by Seventh Judicial District Judge Kevin Sweazea on April 16, 2012. (Doc 43-1 at 5). The following day, Defendant Hays and other officers entered Plaintiff's residence in tactical gear with weapons drawn and executed the warrant. (Doc. 2 at 3). The search recovered approximately 22.21 ounces of marijuana, for which Plaintiff was subsequently arrested. (Doc. 2 at 3–4; Doc. 43-2 at 1–2, 5). That criminal case is still pending. (Doc. 43-5).

During the search, Defendant Hays found several deer heads, deer parts, and a deer carcass hanging in Plaintiff's shed. (Doc. 2 at 7; Doc. 43-2 at 10). He then contacted Defendant Robert Griego, of the New Mexico Department of Game and Fish ("NMDGF"), and told Defendant Griego what he had observed during his search, and that game parts did not appear to have proper documentation. (Doc. 2 at 7; Doc. 43-2 at 10). The parties are in dispute as to the events that followed.

Plaintiff states in his Complaint that Defendant Griego then arrived at his home. (Doc. 2 at 7). Upon arrival at his residence, he informed Defendant Griego that Defendant Griego needed a search warrant to search his property. (*Id.*). Plaintiff alleges that Defendant Griego ignored his request and continued past Plaintiff to begin his investigation. (*Id.*). After Plaintiff told Defendant Griego a second time to get a search warrant, Defendant Griego left his property and returned with a search warrant later that afternoon and proceeded with his investigation. (Doc. 2 at 7–8).

In his *Affidavit for Search Warrant* (the "Griego Affidavit"), Defendant Griego asserts that, upon arrival at Plaintiff's residence, he engaged Plaintiff in conversation. (Doc. 43-2 at 11). He states that Plaintiff showed him several deer carcasses, produced paperwork for the carcasses, and told him that Plaintiff kept deer meat in a freezer. (*Id.*). Defendant Griego states that, only after this conversation and after he made several observations, did Plaintiff state that Defendant Griego had to produce a search warrant in order to look at any more of Plaintiff's property. (*Id.*). He then left the property to work on the warrant immediately. (*Id.*).

The parties do not dispute that, upon Defendant Greigo's return, he seized several deer heads and carcasses, a golden eagle carcass, red-tailed hawk feathers, and packages of various frozen meat. (Doc. 43-2 at 12–13). Plaintiff was later arrested by the United States Fish and Wildlife Service based on the seizure of the golden eagle carcass and red-tailed hawk feathers found during the search. (Doc. 43-3). This action is also still pending. (Doc. 43-5).

Plaintiff filed his *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983* ("Complaint"), (Doc. 2), on April 16, 2014, alleging claims against several defendants. As is relevant here, Plaintiff alleges that Defendants Hays and Griego violated his right to be free from unreasonable searches and seizures under the Fourth Amendment. Specifically, Plaintiff challenges the constitutional sufficiency of Defendant Hays' search warrant and the constitutionality of Defendant Griego's search, and alleges claims of excessive force, malicious prosecution, and violations of due process. (*Id.*).

## II.      Standard of Review

Defendants Hays and Griego (the "State Defendants") filed their Motion as a

motion to dismiss and alternative motion for summary judgment. (Doc. 43 at 1). In

support of their argument for dismissal, the State Defendants attach several exhibits

including materials not contained in Plaintiff's Complaint. (Docs. 43-1 through 43-5). If

the Court chooses to rely on those materials, the Court must convert the Motion to a

motion for summary judgment under FED. R. CIV. P. 12(d). In doing so, the Court must

first "give the parties notice of the changed status of the motion and thereby provide the

parties to the proceeding the opportunity to present to the court all material made

pertinent to such motion by Rule 56." *Whitesel v. Sengenberger*, 222 F.3d 861, 866

(10th Cir. 2000) (internal quotations and citations omitted).

In his Response, Plaintiff does not object to the exhibits or to the Court

construing the Motion as a motion for summary judgment. Indeed, Plaintiff refers to

several exhibits in his Response, and argues that summary judgment should be granted

in his favor.[3] (Doc. 56 at 22); *See Lamb v. Rizzo,* 391 F.3d 1133, 1137 n.3 (10th Cir.

2004) (finding that plaintiff was not prejudiced by the court's conversion of the motion to

dismiss to a motion to summary judgment where plaintiff failed to object to defendant's

exhibits and filed his own exhibits in response). Plaintiff was then given another

opportunity to provide the Court with any additional exhibits in support of his Response

at a hearing on August 28, 2015. (*See* Doc. 65). Because both parties have argued that

---

[3] Although Plaintiff did not actually file any exhibits, he would still be considered to have had notice that
the Court may rule on the Motion as a motion for summary judgment. *See Prospero Associates v.
Burroughs Corp.*, 714 F.2d 1022, 1024–25 (10th Cir. 1983) (holding that plaintiff had notice that court
would convert motion to dismiss to motion for summary judgment where plaintiff did not file any exhibits
with its brief, but referred to the substance of those documents in the brief and obviously intended that the
court consider them). Indeed, Plaintiff states in his Response that he was having problems with his
scanner, and anticipated filing the exhibits soon. (Doc. 56 at 22).

they are entitled to summary judgment, and have had the opportunity to present materials pertinent to the Motion under FED. R. CIV. P. 56, the Court will consider the Motion as a motion for summary judgment, and recommend disposition under that standard.

A. _Summary Judgment_

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The movant bears the burden of making a _prima facie_ demonstration that there is no genuine issue of material fact. _Adler v. Wal-Mart Stores, Inc.,_ 144 F.3d 664, 670–71 (10th Cir.1998) (citing _Celotex Corp. v. Catrett,_ 477 U.S. 317, 323 (1986)). A fact is material if it might affect the outcome of the case under the governing substantive law. _Anderson v. Liberty Lobby, Inc.,_ 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. _Id._ If the moving party has demonstrated an absence of material fact, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." _Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,_ 475 U.S. 574, 587 (1986) (internal quotations omitted).

"[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment_." English v. Colorado Dep't of Corr._, 248 F.3d 1002, 1007 (10th Cir. 2001) (internal citations and quotations omitted). The mere existence of some evidence in support of the nonmoving party, however, will

not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson,* 477 U.S. at 249.  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir. 1995).  The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See Adler*, 144 F.3d at 671.

### B.  *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is an entitlement not to stand trial or face the other burdens of litigation, and acts as an immunity from suit rather than a mere defense to liability. *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (internal citations omitted).

Where a defendant raises the defense of qualified immunity in a motion for summary judgment, the burden shifts to the plaintiff to meet a "heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). First, a plaintiff must establish that the defendant's actions violated a constitutional or statutory right. *Id.* (internal citations and quotations omitted). A plaintiff must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Id.* (internal citations and quotations omitted).

"If a plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina*, 252 F.3d at 1128 (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)). Thus, a court may consider either prong of the qualified immunity analysis.  *See Pearson*, 555 U.S. at 236. In other words, at the summary judgment state, although a court "will review the evidence in the light most favorable to the nonmoving party, [ ], the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise the defendants are entitled to qualified immunity." *Medina*, 252 F.3d at 1128 (citing *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000)).

## III.    Analysis

A civil rights action under § 1983 may be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983 (1996).  To state a claim under § 1983, an injured person must allege a violation of a federally protected right, and must show that the alleged deprivation was committed by an individual acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Plaintiff claims that State Defendants violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment. Specifically, Plaintiff challenges the constitutional sufficiency of Defendant Hays' search warrant and Defendant Griego's search, and alleges claims of excessive force, malicious prosecution, and violations of due process.

State Defendants argue that they are entitled to absolute quasi-judicial immunity

on all of Plaintiff's claims against them, because the search warrants executed in this case were facially valid and signed by Seventh Judicial District Judge Kevin Sweazea, and State Defendants acted within the scope of their jurisdiction in executing the warrants. State Defendants further argue that they are entitled to qualified immunity on all of Plaintiff's claims.[4]

Plaintiff does not respond to State Defendants' argument that they are entitled to absolute quasi-judicial immunity. Plaintiff argues that both Defendants Hays and Griego violated his constitutional rights, and therefore are not entitled to qualified immunity.

A. *Whether State Defendants are Entitled to Absolute Quasi-Judicial Immunity*

State Defendants first contend that they are entitled to absolute quasi-judicial immunity from all civil liability stemming from their execution of Judge Sweazea's warrants. (Doc. 43 at 8–14). State Defendants maintain that absolute quasi-judicial immunity attaches to police officer's acts which are intertwined with the judicial process. (Doc. 43 at 8–9). State Defendants argue that, first, Judge Sweazea's warrants were facially valid as they were issued by a court with jurisdiction to issue such orders, and they were based on the sworn written statements of Defendants Hays and Griego establishing probable cause for a crime. (Doc. 43 at 12–13). Second, State Defendants acted within their jurisdiction when they executed Judge Sweazea's warrants. (Doc. 43 at 14).

The Tenth Circuit has held that "an official charged with the duty of executing a

---

[4] State Defendants also argue that, because Plaintiff filed his Response four days after the Court's deadline, the Court should not consider the Response. (Doc. 61 at 3). The Court ordered Plaintiff to file his Response to the Motion on or before July 20, 2015, (*see* Doc. 49 at 2), and Plaintiff did not file his Response until July 24, 2015. (Doc. 56).  However, while the Response is untimely, State Defendants have not argued that they would be prejudiced by the Court considering the Response, and have had an opportunity to reply to Plaintiff's arguments in their Reply and at the hearing on August, 28, 2015. Therefore, the Court will consider Plaintiff's Response in recommending disposition on the Motion.

facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Valdez v. City and County of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989). State Defendants correctly state that, in order for absolute quasi-judicial immunity to attach, the court order must be facially valid and the officer must have acted within the scope of his jurisdiction in executing the order. *Turney v. O'Toole*, 898 F.2d 1470, 1474 (10th Cir. 1990).

However, the case law cited by State Defendants in support of their argument that they are entitled to absolute quasi-judicial immunity misses the mark. Those cases involve court orders which plaintiffs challenged as inherently invalid, regardless of how they were executed by officials. *See Valdez*, 878 F.2d at 1286 (holding that law enforcement officers who arrested plaintiff based on a judge's order that plaintiff was in contempt of court, and directing the officers to hold plaintiff in custody pending sentencing were entitled to absolute quasi-judicial immunity); *Chavez v. Bernalillo County Commissioners, et al.*, CV No. 97-1074 LFG/DJS, at *9 (D.N.M. filed June 15, 1988) (unpublished) (concluding that police officer was immune from suit for arresting plaintiff on the court's bench warrant, even where bench warrant itself may have been invalid). Indeed, these claims challenge a judge's authority to issue the warrant, rather than challenge discretionary actions committed by officials while executing the warrant.

Here, the issues are different. Plaintiff is challenging State Defendants' conduct in connection with obtaining and executing the search warrant, not necessarily the judge's authority to issue the warrant in the first place. Plaintiff alleges that the affidavits provided in support of the applications for the warrants were invalid, and based on false information. He also claims that State Defendants used excessive force in executing the

warrant and maliciously prosecuted him. This is not a case where the Court is "forcing officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly." *Valdez*, 878 F.2d at 1286. Rather, this is a case where the Plaintiff is specifically challenging the acts of the officers themselves while acting within their discretion, not Judge Sweazea's authority to issue the warrants. Accordingly, the Court finds that State Defendants are not entitled to absolute quasi-judicial immunity in this action.

### B. Whether State Defendants are Entitled to Qualified Immunity

State Defendants also argue that they are entitled to qualified immunity on all of Plaintiff's claims against them. Plaintiff maintains that State Defendants violated his constitutional rights, and therefore are not entitled to qualified immunity. The Court will address Plaintiff's claims against each defendant separately.

#### 1. Plaintiff's Claims Against Defendant Hays

Defendant Hays argues that he is entitled to qualified immunity on Plaintiff's claims against him. Generally, Defendant Hays asserts that Plaintiff cannot show that Defendant Hays violated his clearly established rights in applying for and executing the search warrant, approaching Plaintiff's residence in tactical gear and weapons, arresting Plaintiff on several criminal charges, and initiating the criminal investigation despite Plaintiff's status as a qualified patient under the Act.

#### a. Plaintiff's Challenge to the Search Warrant

Defendant Hays argues that Plaintiff cannot dispute that he reasonably believed

he had probable cause that Plaintiff was growing and distributing large amounts of marijuana in his home, and therefore had probable cause to apply for a search warrant of Plaintiff's property and for Plaintiff's arrest. (Doc. 43 at 23).

Plaintiff responds that Defendant Hays' Affidavit in support of the search warrant is invalid because it was not sworn to under oath before Judge Sweazea. (Doc. 56 at 2–5). Plaintiff also argues that the warrant lacked probable cause because the information contained in the Affidavit was false. (Doc. 56 at 1–2). Plaintiff claims that Defendant Hays had a reckless disregard for the truth in using the information in his Affidavit as the basis for the search warrant, and thereby violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment. (Doc. 66 at 3–4).

Defendant Hays replies that the Affidavit for the search warrant was valid, and the search warrant was properly issued. (Doc. 61 at 3–11). Defendant Hays also generally asserts that Plaintiff has failed to demonstrate that he is not entitled to qualified immunity. (Doc. 61 at 11).

### i.    *The Affidavit Was Properly Written and Upon Oath or Affirmation*

Plaintiff claims that Defendant Hays' Affidavit submitted to Judge Sweazea in support of his application for the search warrant was invalid because Defendant Hays was not placed under oath in the presence of Judge Sweazea. (Doc. 56 at 2–5; Doc. 66 at 3). In his Reply, Defendant Hays states that that the Affidavit was valid, since it was signed by Defendant Hays in front of a notary, contained the requisite language for an oath or affirmation, and was presented to Judge Sweazea. (Doc. 61 at 10).

In New Mexico, "[a] warrant shall issue only on a sworn written statement of the facts showing probable cause for issuing the warrant." N.M. STAT. § 5-211(A)(4) (2012). The issuing court "may require the affiant to appear personally" in order to be examined under oath. *Id.* at § 5-211(E). The New Mexico Court of Appeals has held that this rule is permissive; a court may require the physical presence of the affiant in order to examine him under oath, but the affiant's physical presence is not mandatory for a search warrant to properly issue. *State v. Balenquah*, 146 N.M. 267, 273 (N.M. Ct. App. 2009).

Here, Plaintiff admits that Judge Sweazea reviewed the Affidavit, and approved and signed the search warrant. (Doc. 56 at 2). Plaintiff suggests that because Judge Sweazea did not administer an oath, and that Defendant Hays did not take an oath in the Judge's presence, that the Affidavit is invalid. However, Defendant Hays provided his Affidavit to be considered in support of his application for a warrant, signed the Affidavit in the presence of a notary, and the Affidavit contained the requisite language for an oath or affirmation. *See State v. Knight*, 128 N.M 591, 599–600 (N.M. Ct. App. 2000) (holding that a law enforcement officer's appearance in front of a notary and signature on a document in the form of an oath, while aware that the affidavit is to be used as a sworn document, fulfills the requirements of an oath or affirmation); (Doc. 43-1 at 1("being duly sworn upon his oath . . . ."), 4 (bearing the official seal of a notary and stating "[s]ubscribed and sworn to or declared and affirmed to me . . . ."). Under New Mexico law, this is sufficient for the warrant to be properly issued, and it was not necessary that Defendant Hays swear to his statements in the presence of Judge Sweazea.

The cases relied upon by Plaintiff in support of his argument do not suggest otherwise. Indeed, Plaintiff first cites to *State v. Boyse*, 265 P.3d 1284, 1288–89 (N.M. Ct. App. 2011), which held that an officer's reading of an affidavit stating probable cause over the phone to the magistrate judge, in lieu of providing a physical written statement in an application for a warrant, did not meet the requirements of the New Mexico Constitution. Those are not the facts here. Plaintiff does not dispute that Judge Sweazea reviewed the affidavit. (Doc. 56 at 2). Moreover, that case was later reversed by the New Mexico Supreme Court, which ruled, in that case, that it was unnecessary that the officer physically show the magistrate judge the statement of probable cause, and that his presentation of probable cause over the phone was sufficient to properly issue the warrant. *State v. Boyse*, 303 P.3d 830, 834 (N.M. 2013).

Second, Plaintiff includes an excerpt from another case, but does not provide a citation or any other information indicating where the excerpt may be found. (Doc. 56 at 4). In any event, the portion deals with a warrant issued on an officer's unsworn affidavit, and where the officer testified that he was never put under oath and did not sign the affidavit in the presence of a notary. Again, that is not the case here. As described above, Defendant Hays signed the Affidavit in the presence of a notary and the Affidavit contained the requisite language for an oath or affirmation required under law.

Accordingly, Plaintiff has failed to demonstrate that Defendant Hays' Affidavit is invalid as a matter of law and that the resulting warrant was unconstitutional.

    *ii.*   *Plaintiff Has Not Shown that Defendant Hays Exhibited a*
         *Reckless Disregard for the Truth in Drafting the Affidavit*

Plaintiff also argues that Defendant Hays' search warrant was not supported by probable cause, and therefore the search of his property was unconstitutional. Plaintiff does not dispute that the information contained in Defendant Hays' Affidavit, taken as true, provides probable cause that Plaintiff was engaged in a marijuana cultivation operation. Rather, Plaintiff argues that the information provided by Defendant Hays in the Affidavit, and relied up on by Judge Sweazea in issuing the search warrant, was false. (Doc. 56 at 5, 18, 19; Doc. 66 at 3–4).

The Tenth Circuit has held that when public officials

> engage[ ] in a deliberate course of conduct, complete with false information, designed to gain entry into a home, and when the false information was essential to persuade a judge to issue the order upon which the defendants relied in gaining entry into a home, those responsible for providing the false information may have violated the Fourth Amendment . . . .

*Wright v. City of St. Francis, KS*, No. 02-3337, 95 Fed. Appx. 915, 929 (10th Cir. Apr. 20, 2004) (unpublished) (internal quotations citations omitted). Where a plaintiff makes such allegations, and a defendant raises the defense of qualified immunity, the claim may survive qualified immunity if the plaintiff can "make a substantial showing of deliberate falsehood or reckless disregard for truth, such that would be needed to challenge the presumed validity of an affidavit supporting a search warrant under *Franks v. Delaware*, 438 U.S. 154, 171 (1978)." *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990) (internal citations and quotations omitted). "Likewise . . . there must be a specific affirmative showing of dishonesty by the applicant, i.e., knowledge of a plaintiff's innocence or that a witness was lying." *Id.*

Here, Plaintiff argues that Defendant Hays exhibited a reckless disregard for the truth because he assumed the information Defendant Cearley provided regarding Plaintiff's statements and activities was true. Plaintiff asserts that Defendant Hays should have approached him to confirm whether the information was correct, or otherwise corroborate it with additional evidence. (Doc. 66 at 3). In response, Defendant Hays argues that the Affidavit provides probable cause, and that he took great care to corroborate information he received from fellow officers with other evidence. (Doc. 66 at 4). This Court agrees.

Even assuming the information Defendant Hays stated in his Affidavit was false, Plaintiff has provided no evidence exhibiting "deliberate and willful conduct" on the part of Defendant Hays, or "specific evidence tending to show that the allegations . . . were fabricated and that [Defendant Hays] knew that such allegations were untrue." *Snell*, 920 F.2d at 697–98. Indeed, by way of evidence, Plaintiff has only presented his verified Complaint, in which he states that Defendant Cearley provided Defendant Hays with false information regarding Plaintiff's activities, which later became the basis for the search warrant executed on his property. (Doc. 2 at 2). Plaintiff does not allege that Defendant Hays knew of the falsity, or had a reckless disregard for the truth. (*Id.*); *Martinez v. Lucero*, No. CIV 11-1003 JB/LFG, 2012 WL 2175772, at *29 (D.N.M. May 31, 2012) (unpublished) (rejecting plaintiff's claim of judicial deception where plaintiff did not allege that defendant's conduct was intentional or objectively unreasonable).

Furthermore, Defendant Hays' Affidavit in support of his application for the search warrant of Plaintiff's property indicates that he did, in fact, corroborate much Defendant Cearley's statements with other evidence. (*See* Doc. 43-1). First, with regard

to Defendant Cearley's general assertion that he believed Plaintiff was involved in growing and distributing large amounts of marijuana, Defendant Hays spoke with New Mexico State Police Patrolman Steven Carter. (*Id.* at 2). Patrolman Carter stated that he had received information from another confidential source that Plaintiff had been growing approximately 100 marijuana plants in his basement.[5] (*Id.* at 2).

Defendant Hays also contacted the NMDOH Medical Marijuana Program to confirm that Plaintiff had a medical marijuana permit, as Plaintiff allegedly disclosed to Defendant Cearley. (*Id.* at 2–3). Based on Plaintiff's status as a "qualified patient," as confirmed by the NMDOH, Defendant Hays determined that Plaintiff was not authorized to produce and distribute marijuana under the Act. (*Id.* at 3). As to Defendant Cearley's statement that Plaintiff's swamp cooler and air compressor running year round, including winter months, (Doc. 43-1 at 2), Defendant Hays obtained records from Socorro Electric Cooperative, which indicated that the monthly kilowatt usage at Plaintiff's residence was significantly higher than the average usage for a residence of a similar size and occupancy on the same street. (*Id.* at 3).

In the face of Defendant Hays' exhaustive Affidavit, which demonstrates that Defendant Hays corroborated and confirmed several statements made by Defendant Cearley, Plaintiff has not provided any evidence creating a genuine dispute as to whether Defendant Hays had a reckless disregard for the truth of the information he provided to Judge Sweazea in his application for the search warrant. Therefore, Plaintiff's claim cannot survive qualified immunity.

---

[5] Plaintiff argues that the information provided by Patrolman Steve Carter was stale because it relied on statements made in late 2010 to early 2011, (Doc. 66 at 3), but that does not suggest that Defendant Hays knew the information was incorrect.

### b. Plaintiff's Excessive Force Claim

Defendant Hays next argues that Plaintiff's claim that he used constitutionally excessive force in the execution of the search warrant fails as a matter of law. (Doc. 43 at 17). Defendant Hays does not dispute that he and his agents entered Plaintiff's property with weapons drawn. Instead, Defendant Hays argues that doing so was not unreasonable. (Doc. 43 at 17–19).

Plaintiff responds that Defendant Hays and his agents used constitutionally excessive force by executing the search warrant in tactical gear and carrying weapons. (Doc. 56 at 9). Plaintiff argues that this was unnecessary given his status as a qualified patient under the Act. (Doc. 56 at 6).

Excessive force claims are treated as seizures subject to the reasonableness requirement of the Fourth Amendment. *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) (internal citation omitted). Thus, an officer facing an excessive force claim is entitled to qualified immunity unless the plaintiff demonstrates that the force used was objectively unreasonable under the Fourth Amendment. *Id.* Objective reasonableness is based on "whether the totality of the circumstances justified the use of force," and requires courts to "pay careful attention to the facts and circumstances of a particular case." *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995).

In support of his argument that he is entitled to qualified immunity, Defendant Hays has presented Tenth Circuit case law holding that it is not unreasonable for officers to enter the home of an individual with a reputation of possessing firearms with their weapons drawn. *See Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1516

(10th Cir. 1995). Defendant Hays also cites persuasive authority acknowledging that it is common knowledge that drug dealers are often armed. (Doc. 43 at 19). Defendant Hays provides his Affidavit, which was the basis for the application for the search warrant, stating that he believed Plaintiff to be involved in the production and distribution of marijuana. (Doc. 43-1).

Plaintiff has not responded with any argument or case law that Defendant Hays' actions were objectively unreasonable under the Fourth Amendment in light of the circumstances of the arrest. His only argument is that it was unnecessary for Defendant Hays to obtain a warrant because, under the Act, the NMDOH may visit the home of a participant in the cannabis program at any time to confirm compliance with its terms. This argument is fully discussed in addressing Plaintiff's due process claim based on his status as a qualified patient below. *See*, discussion *infra* Part III.B.1.d., pp. 20–21.

Plaintiff has simply not met his burden to demonstrate that Defendant Hays has violated his clearly established constitutional rights in executing the search warrant in tactical gear and with weapons drawn.  As a result, the Court finds that Defendant Hays is entitled to qualified immunity on Plaintiff's claim of excessive force.

### c. Plaintiff's Malicious Prosecution Claim

Defendant Hays next contends that Plaintiff cannot state a claim for malicious prosecution because he has failed to demonstrate that Defendant Hays lacked probable cause to arrest Plaintiff or that Plaintiff's criminal case stemming from that arrest has terminated in his favor. (Doc. 43 at 19–23, 23–25).

Plaintiff responds that the charges stemming from the search on April 17, 2012 were dropped *nolle prosequi* on July 16, 2012, and therefore terminated in his favor.

(Doc. 56 at 10–15). However, Plaintiff also admits that criminal charges have been re-filed and that those charges have not been resolved. (Doc. 56 at 10 ¶ 8; Doc. 66 at 3).

In the Tenth Circuit, courts use the common law elements of malicious prosecution as the starting point in a § 1983 malicious prosecution analysis. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257 (10th Cir. 2007). "[H]owever, the ultimate question is whether plaintiff has proven the deprivation of a constitutional right." *Id.* at 1257–58 (citing *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)).

In his Complaint, Plaintiff brings a claim for malicious prosecution, stating in support that he was "arrested by Hays on May 2, 2012." (Doc. 2 at 3). The Court construes Plaintiff's § 1983 malicious prosecution as being premised on a violation of the Fourth Amendment right to be free from unreasonable searches and seizures, as his underlying challenge to the search leading up to his arrest is based on a lack of probable cause.[6] Because of this, the Court will analyze the elements of Plaintiff's malicious prosecution claim in light of Fourth Amendment guarantees. *Wilkins v. DeReyes*, 528 F.3d 790, 797 (10th Cir. 2008).

A § 1983 malicious prosecution claim brought under the Fourth Amendment requires a showing of the following elements:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) (citing *Wilkins*, 528 F.3d at 799)). In determining whether the original action terminated in the plaintiff's favor, the

---

[6] The Court acknowledges that where, as here, a party is proceeding pro se, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Court must consider "whether there is an acquittal, or a failure to proceed, which indicates a lack of reasonable grounds for prosecution." *Montoya v. Sheldon*, No. CIV 10-0360 JB/WDS, 2012 WL 5378288, at *7 (D.N.M. Oct. 29, 2012) (unpublished) (citing *Wilkins*, 528 F.3d at 803)).

Accordingly, where a prosecutor files a *nolle prosequi*, thereby abandoning the criminal proceedings, the Court must look to the stated reasons for the dismissal and the circumstances surrounding the dismissal to determine whether it indicates the accused's innocence. *Wilkins*, F.3d 528 at 803 (citing *Logan v. Caterpillar, Inc.*, 246, F.3d 912, 925 (7th Cir. 2001)). Indeed, a charge may be dropped *nolle prosequi* for a variety of reasons, including an agreement of compromise with the accused or an inability of the prosecutor to prove a case beyond a reasonable doubt at trial. *Id.* at 802–03. "To that end, a 'bare nolle prosse without more is not indicative of innocence.'" *Id.* at 803 (citing *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997)).

Here, Plaintiff argues that, because the charges filed on April 17, 2012 stemming from the search of his property were dropped *nolle prosequi*, the proceedings terminated in his favor. However, Plaintiff has not provided any evidence to suggest that the *nolle prosequi* in the underlying criminal proceeding was indicative of innocence. Rather, he admits that the charges have been re-filed, and are currently pending against him, which does not imply a lack of reasonable grounds for the prosecution. (Doc. 56 at 10 ¶ 8). In fact, abandonment of the proceedings is ordinarily insufficient to constitute a favorable termination "'if new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused.'" *Wilkins*, 528 F.3d at 803, n.9 (citing Restatement (Second) of Torts § 660 (1977)).

Defendant Hays has provided a docket sheet in the matter of *State of New Mexico v. Simon Armijo*, M-52-FR-201500057, in the Socorro County Magistrate Court, which indicates that the charges dated April 17, 2012 were re-filed in a criminal complaint on April 2, 2015, and stem from the search on that same date. (Doc. 43-5 at 3–4; Doc. 43-3 at 3–7 (*Statement of Facts Supporting Criminal Complaint*, dated April 1, 2015)). Thus, Plaintiff has not created a genuine dispute of material fact as to whether the original action against him terminated in his favor, and therefore Defendant Hays is entitled to qualified immunity on Plaintiff's malicious prosecution claim.

### d.  Plaintiff's Due Process Claim

Finally, as to Plaintiff's alleged due process violation, Defendant Hays argues that the facts of this case do not support such a claim. (Doc. 43 at 25). Defendant Hays argues that Plaintiff's due process claim must be addressed in the context of the Fourth Amendment. Defendant Hays contends that because Plaintiff's arrest was supported by probable cause, there was no Fourth Amendment violation. (*Id.*).

The crux of Plaintiff's claim is that, because Plaintiff is a qualified patient under the Act, Defendant Hays should have approached Plaintiff or contacted the NMDOH as provided by the Act, rather than subject him to a criminal investigation and prosecution. (Doc. 2 at 4; Doc. 56 at 7). This argument has no merit. It is undisputed that Plaintiff is a "qualified patient" under the Act, and is therefore entitled to possess an adequate supply of marijuana for his own personal use.[7] N.M. CODE R. § 7.34.4.8 (2015). However, under the Act, a participant in the medical use of cannabis program is not relieved from criminal prosecution or civil penalties for activities not authorized by the Act. N.M. STAT.

---

[7] A qualified patient who holds a valid personal production license is authorized to possess no more than four mature female plants and a combined total of 12 seedlings and male plants. N.M. CODE R. § 7.34.4.8.

§ 26-2B-5. Plaintiff does not argue that he is authorized to produce and distribute marijuana beyond his personal use under the Act, and instead insists that he only possessed an amount appropriate for his personal use. (Doc. 56 at 10 ¶ 6). Plaintiff has provided no authority to suggest that he is immune from an independent criminal investigation and prosecution for activities not authorized by the Act. As thoroughly discussed above, *see supra* pp. 14–15, Defendant Hays was presented with information which suggested that Plaintiff was growing and distributing large amounts of marijuana, and that the search warrant executed in connection with the investigation was valid. Plaintiff has not otherwise demonstrated that Defendant Hays violated his clearly established rights under the Fourth Amendment by initiating a criminal investigation and applying for a search warrant based on this information.

### 2. *Plaintiff's Claims Against Defendant Griego*

Defendant Griego similarly argues that he is entitled to qualified immunity on Plaintiff's claims against him. Generally, Defendant Griego maintains that Plaintiff cannot show that Defendant Griego violated Plaintiff's clearly established rights in the institution of criminal charges against Plaintiff or Defendant Griego's search and seizure of Plaintiff's property.

### a. *Plaintiff's Malicious Prosecution Claim*

Defendant Griego contends that Plaintiff cannot state a claim for malicious prosecution against him because Plaintiff has failed to demonstrate that Defendant Griego lacked probable cause to arrest Plaintiff or that Plaintiff's criminal case stemming from that arrest has terminated in his favor. (Doc. 43 at 19–23, 23–25).

Plaintiff does not specifically respond to this argument as it relates to Defendant Griego. Plaintiff does admit, however, that the charges related to Defendant Griego's search of his property are still pending in federal court. (Doc. 56 at 10 ¶ 8; Doc. 66 at 7).

Again, in his Complaint, Plaintiff brings a claim for malicious prosecution, stating in support that he was "arrested by Hayes on May 2, 2012." (Doc. 2 at 3). To the extent Plaintiff is also alleging this claim against Defendant Griego, the Court similarly construes Plaintiff's § 1983 malicious prosecution as being premised on a violation of the Fourth Amendment right to be free from unreasonable seizures, as his underlying challenge to the search leading up to his arrest is based on the warrantless search and seizure of his property. As a result, the Court will analyze the elements of Plaintiff's malicious prosecution claim in light of Fourth Amendment guarantees. *Wilkins*, 528 F.3d at 797.

As stated above, a § 1983 malicious prosecution claim brought under the Fourth Amendment requires a showing of the following elements:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Stonecipher*, 759 F.3d at 1146 (citing *Wilkins*, 528 F.3d at 799)). In determining whether the original action terminated in the plaintiff's favor, the Court must consider "whether there is an acquittal, or a failure to proceed, which indicates a lack of reasonable grounds for prosecution." *Montoya*, 2012 WL 5378288, at *7 (citing *Wilkins*, 528 F.3d at 803)).

Here, Plaintiff does not dispute that the charges resulting from Defendant Griego's search of his property are still pending. (Doc. 56 at 10 ¶ 8). In addition, Defendant Griego has attached a docket sheet in the matter of *United States v. Armijo*, No. 14-po-00064-KBM-1 (D.N.M. 2014), which reflects that the charges stemming from Defendant Griego's search on April 17, 2012 are still pending before the United States District Court for the District of New Mexico. (Doc. 43-5 at 1–2). Thus, Plaintiff has not created a genuine dispute of material fact as to whether the original action against him terminated in his favor, and therefore Defendant Griego is entitled to qualified immunity on Plaintiff's malicious prosecution claim.

*b. Plaintiff's Challenge to Defendant Griego's Search*

Defendant Griego also argues that Plaintiff cannot dispute that he reasonably believed he had probable cause that Plaintiff was in possession of illegal game parts, and therefore had probable cause to apply for a search warrant of Plaintiff's property, which was later properly executed. (Doc. 43 at 23).

Plaintiff responds that, after Defendant Hays contacted Defendant Griego regarding allegedly illegal game parts, Defendant Griego entered Plaintiff's residence without a search warrant and over Plaintiff's objection. (Doc. 56 at 17). Plaintiff also argues that, because the search warrant executed by Defendant Hays was invalid, Defendant Griego had no right to be on Plaintiff's property. (*Id.*; Doc. 66 at 6). Plaintiff maintains that Defendant Griego then obtained a search warrant containing information obtained in violation of Plaintiff's Fourth Amendment rights. (*Id.*). Further, Plaintiff states that Defendant Griego falsified facts in his affidavit submitted in support of his application for the search warrant. (Doc. 56 at 18; Doc. 66 at 6).

Defendant Griego replies that Defendant Hays' statements to Defendant Griego were sufficient to establish probable cause for possession of illegal game parts. (Doc. 66 at 6). In addition, Defendant Griego argues that, for reasons stated throughout his briefing, that the search warrant executed by Defendant Hays was valid, and that Defendant Griego's subsequent application for and execution of the search warrant was not tainted by Defendant Hays' prior search. (Doc. 61 at 11–12).

As an initial matter, Plaintiff's argument that Defendant Griego's search was unconstitutional, based on the fact that Defendant Hays' search was invalid, must fail. For the reasons stated above, the Court finds that Defendant Hays' search warrant was valid, and that the execution of the search warrant was otherwise constitutional. Accordingly, Defendant Griego's search of Plaintiff's property did not violate Plaintiff's Fourth Amendment rights on the basis that Defendant Hays' search was unconstitutional.

Second, Plaintiff's claim that Defendant Griego falsified information in his affidavit in support of the application for the search warrant is also without merit. Plaintiff does not allege this claim or any supporting facts in his Complaint. As a result, the only relevant information before the Court is Plaintiff's unsupported and conclusory statement at the hearing that Defendant Griego falsified facts in his affidavit in order to secure the search warrant. (*See*, Doc. 66 at 6). Plaintiff has provided nothing by way of evidence in support of this claim. Thus, to the extent Plaintiff states such a claim against Defendant Griego, that claim does not survive summary judgment.

Finally, Plaintiff further argues that Defendant Griego searched his property without a warrant and over Plaintiff's objection, in violation of the Fourth Amendment,

and relied on the information he obtained during that investigation in applying for the search warrant ultimately executed on Plaintiff's property. (Doc. 56 at 17). Defendant Griego does not specifically respond to this argument, but provides the Court with Defendant Griego's Affidavit submitted in support of his warrant application, in which he states that the information he observed prior to obtaining the search warrant was with Plaintiff's consent. (Doc. 43-2 at 10–11). Defendant Griego also generally states that the statements from Defendant Hays regarding the lack of documentation on several deer heads and carcasses provided probable cause for possession of illegally obtained game parts. (Doc. 66 at 6).

<em>i.   Whether Defendant Griego Violated Plaintiff's<br>Constitutional Rights</em>

"It is a basic principle of Fourth Amendment law that searches and seizures inside the home without a warrant are presumptively unreasonable unless the police can show both probable cause and the presence of exigent circumstances." *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1171–72 (10th Cir. 2003) (internal citations omitted). In addition to the house itself, the Fourth Amendment also protects the curtilage of a house from warrantless searches and seizures. *United States v. Dunn*, 480 U.S. 294, 300 (1987).[8]

"Despite its fundamental nature, the warrant requirement for entry into a home has a few carefully established exceptions." *Manzanares v. Higdon*, 575 F.3d 1135, 1143 (10th Cir. 2009) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

---

[8] The parties do not dispute that the shed on Plaintiff's property was within the curtilage of Plaintiff's home. (*See* Doc. 43-2 at 1 (describing the premises to be searched as a house with "a wire fence around the residence and various outbuildings and curtilage.")).

One of these exceptions is a search conducted pursuant to voluntary consent. *See Schneckloth*, 412 U.S. at 219.

Here, the parties are in dispute as to the events that occurred upon Defendant Griego's arrival on Plaintiff's property. In his verified Complaint, Plaintiff states that Defendant Hays contacted the NMDGF, and Defendant Griego arrived at Plaintiff's residence to investigate Plaintiff's alleged possession of illegal game parts. (Doc. 2 at 7). Plaintiff asserts that upon Defendant Griego's arrival, Plaintiff advised him that he needed a warrant to search his property. (*Id.*). Plaintiff alleges that Defendant Griego ignored that request and continued past him in order to conduct an investigation. (*Id.*). After calling his attorney, Plaintiff advised Defendant Griego a second time that he needed a warrant to search the property. (*Id.*). Defendant Griego left Plaintiff's property and later returned with a search warrant. (*Id.*). Plaintiff argues that Defendant Griego used information obtained during the initial warrantless search in his application for the search warrant. (Doc. 56 at 17).

In Griego's Affidavit, Defendant Griego describes a different version of events following his arrival on Plaintiff's property. Defendant Griego asserts that, upon arrival, he engaged Plaintiff in conversation. (Doc. 43-2 at 11). He states that Plaintiff showed him several deer carcasses, produced paperwork for the carcasses, and told him that Plaintiff kept deer meat in a freezer. (*Id.*). Defendant Griego asserts that, only after this conversation and after making several observations, did Plaintiff state that Defendant Griego had to produce a search warrant in order to look at any more of Plaintiff's property. (*Id.*). Defendant Griego then left the property to work on the warrant immediately. (*Id.*). In his application for the search warrant, Defendant Griego attaches

the Griego Affidavit, which relies heavily on the information he obtained and observations made during the alleged conversation with Plaintiff to establish probable cause for the warrant. (*Id.*).

In determining a motion for summary judgment based on qualified immunity, the Court construes the facts in the light most favorable to the plaintiff, which usually means that the Court "accept[s] the facts as the plaintiff alleges them . . . ." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Indeed, the Court adopts "'the plaintiff's version of the facts,' [ ] unless that version 'is so utterly discredited by the record that no reasonable jury could have believed him.'" *Rhoads v. Miller*, No. 08-8093, 352 Fed. Appx. 289, 291 (10th Cir. Nov. 5, 2009) (unpublished) (citing *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007)). Where the only evidence that contradicts the plaintiff's version of the facts is another witness' testimony, the question becomes one of reconciling inconsistent testimony or assessing credibility, which is a determination left to the jury. *Allen v. Wal-Mart Stores, Inc.*, 241 F.3d 1293, 1297 (10th Cir. 2001) ("The weighing of evidence, the reconciliation of inconsistent testimony, and the assessment of a witness' credibility is solely within the province of the jury.").

In this case, if the Court views the facts as alleged by Plaintiff, the Court assumes that Defendant Griego entered Plaintiff's property without a warrant over Plaintiff's objection, and obtained information that was then used in an application for a search warrant executed on Plaintiff's property. The only evidence before the Court that discredits Plaintiff's version of the facts is Defendant Griego's own account of his conversation with Plaintiff as stated in the Griego Affidavit. There is no evidence that utterly discredits Plaintiff's version of the facts such that no reasonable jury could

believe him. *Compare Rhoads*, 352 Fed. Appx. at 291 (viewing facts as alleged by the plaintiff where the only contradicting evidence was testimony from other witnesses), *with Scott*, 550 U.S. at 379 (rejecting the plaintiff's version of events where it was blatantly contradicted by a videotape). As a result, the Court adopts Plaintiff's version of the facts.

In viewing the facts as alleged by Plaintiff, the Court finds that, based on the well-established law stated above, these allegations are sufficient to support a claim that Defendant Griego violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment. Indeed, according to Plaintiff, Defendant Griego conducted a warrantless search of Plaintiff's property, specifically Plaintiff's shed, without Plaintiff's consent. Even assuming that Defendant Hays' statements to Defendant Griego regarding the lack of documentation for the deer heads and carcasses provided Defendant Griego with probable cause to conduct the search, the law requires that Defendant Griego produce a warrant in order to do so.

ii. *Whether Plaintiff's Right Was Clearly Established at the Time of Defendant Griego's Unlawful Conduct*

In addition to demonstrating that Defendant Griego violated his constitutional rights, in order for this claim to survive qualified immunity, Plaintiff must show that the right at issue was clearly established at the time of Defendant Griego's unlawful conduct. A right is clearly established if "the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right." *Martinez*, 2012 WL 2175772, at *21 (citing *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007)). "Ordinarily, in order for

30

the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (internal citations omitted).

Here, the right to be free from warrantless searches and seizures inside the home is a basic Fourth Amendment Principle. *Marshall*, 345 F.3d at 1171–72. The fact that these searches are patently unreasonable, absent circumstances establishing an exception, is certainly well established. *United States v. Davis*, 290 F.3d 1239, 1242 (10th Cir. 2002) ("With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no.") (internal citations and quotations omitted). The only exception to the warrant requirement triggered by the facts presented of this case is Plaintiff's voluntary consent. Viewing the facts as alleged by Plaintiff, Defendant Griego did not obtain consent to search his property, and began an investigation despite his objections to Defendant Griego's presence.  A reasonable officer in Defendant Griego's position would understand that those actions violated Plaintiff's right to be free from warrantless searches and seizures inside his home. Therefore, the Court finds that Plaintiff's right was clearly established at the time of Defendant Griego's unlawful conduct. Accordingly, the Court concludes that Defendant Griego is not entitled to qualified immunity on this claim, and summary judgment should be denied.

## IV.    Recommendation

For the foregoing reasons, the Court finds that Plaintiff has not created a genuine

dispute of material fact as to whether Defendant Hays violated his clearly established constitutional rights, or whether Defendant Griego violated his clearly established constitutional rights in causing charges to be brought against him. Thus, Defendant Hays is entitled to qualified immunity on all of Plaintiff's claims against him, and Defendant Griego is entitled to qualified immunity on Plaintiff's malicious prosecution claim. The Court further finds that Plaintiff has created a genuine dispute of material fact as to whether Defendant Griego violated his clearly established right to be free from unreasonable searches under the Fourth Amendment. Therefore, the Court finds that the State Defendants are entitled to summary judgment on all of Plaintiff's claims, except Plaintiff's Fourth Amendment claim against Defendant Griego.

**IT IS THEREFORE RECOMMENDED** that *State Defendants' Motion to Dismiss or Alternatively, Motion for Summary Judgment*, (Doc. 43), be **GRANTED IN PART** and **DENIED IN PART**. The Court recommends that:

(1)     summary judgment based on qualified immunity be **GRANTED** in favor of Defendant Hays on all of Plaintiff's claims against him, and that those claims be **DISMISSED WITH PREJUDICE**;

(2)     summary judgment based on qualified immunity be **GRANTED** in favor of Defendant Griego on Plaintiff's malicious prosecution claim, and that the malicious prosecution claim be **DISMISSED WITH PREJUDICE**; and

(3)     summary judgment  based on qualified immunity be **DENIED** as to Plaintiff's Fourth Amendment claim against Defendant Griego.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE