# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SIMON ARMIJO,

             Plaintiff,

vs.                                                              No. CIV 14-0362 JB/CG

RONY D. HAYES, LARRY CEARLY,
ROBERT GRIEGO, and VILLAGE OF
MAGDALENA,

             Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) United States Magistrate Judge's Proposed Findings and Recommended Disposition, filed September 11, 2015 (Doc. 68) ("PFRD"); and (ii) the Plaintiff's Objection to Propo[s]ed Findings and Recommendation Ob[j]ection to Stay and Leave to File a Motion Under Rule 60 (B), filed September 28, 2015 (Doc. 69)("Objections").  The PFRD recommends that the Court grant Defendant Cearley and Village of Magdalena's Motion to Dismiss and Alternative Motion for Summary Judgment, filed June 18, 2015 (Doc. 39)("MTD/MSJ"), and dismiss Plaintiff Simon Armijo's claims against them with prejudice.  The Honorable Carmen E. Garza, United States Magistrate Judge, notified the parties that written objections to the PFRD were due within fourteen days and that failure to object would prevent appellate review.  <u>See</u> PFRD at 13.  Armijo timely filed his Objections on September 28, 2015; Defendants Larry Cearley and Village of Magdalena filed their Response by Defendants Cearley and Village of Magdalena to Plaintiff's Objections to the Magistrate's Proposed Findings (Document No. 69)(Doc. 70)("Response"), on September 29, 2015.  After a de novo review of the record and Judge Garza's PFRD, and considering Armijo's additional evidence, the Court adopts Judge Garza's PFRD.

## FACTUAL BACKGROUND

As Judge Garza described, this case arises from the search and seizure of Armijo's property in the Village of Magdalena, New Mexico, on April 17, 2012, and Armijo's subsequent arrest. See PFRD at 2.  Armijo is a "qualified patient" under the Lynne and Erin Compassionate Use Act (the "Medical Marijuana Act"), N.M. Stat. Ann. §§ 26-2B-1-7 (2007), which allows him to legally possess certain amounts of marijuana.  See Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at 2, 3, 4, 7, filed April 16, 2014 (Doc. 2)("Complaint"); Clerk's Minutes for Motions Hearing Held on 8/28/2015 at 2, filed September 1, 2015 (Doc. 66)("Clerk's Minutes").[1]

In early 2012, Larry Cearley, Marshal for the Village of Magdalena, contacted the District Attorney's Office for the Seventh Judicial District of New Mexico with information regarding Armijo's past statements and activities, which suggested Armijo was engaging in production and distribution of marijuana which the Medical Marijuana Act does not authorize. See Complaint at 2; Affidavit of Larry Cearley, filed June 18, 2015 (Doc. 39-1)(the "Cearley Affidavit").  Specifically, Cearley spoke with Ronny Hays of the District Attorney's office, who is also a defendant in this action.[2]  Cearley stated that, as Armijo's neighbor, he observed that: (i) known drug users frequent Armijo's residence; (ii) a high volume of traffic in and out of the property for only short periods of time; and (iii) that Armijo continually ran his swamp cooler

---

[1]Armijo verified his Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at 6, filed April 16, 2014 (Doc. 2), and the Court may therefore treat the Complaint as an affidavit for purposes of summary judgment.  See Conway v. Smith, 853 F.2d 789, 792 (10th Cir. 1988).

[2]Hays' name is spelled "Rony Hayes" in Armijo's Complaint and in the caption of this case.  See Complaint at 1.  This spelling is apparently not correct, as Hays' name is spelled "Ronny Hays" in his briefs supporting documents submitted to the Court.  See State Defendants' Motion to Dismiss or Alternatively, Motion for Summary Judgment, filed July 1, 2015 (Doc. 43).  The Court will use the spelling that Hays provides.

and air compressor throughout the year, even in the winter months.  See Cearley Affidavit at 1-2.

Cearley also relayed a conversation he had with Armijo, in which he alleges that Armijo asked

whether Cearley thought a local power outage was a result of all the lights Armijo used for

Armijo's marijuana plants.  See Cearley Affidavit at 1.

Hays used this information in his Affidavit for Search Warrant (executed April 16, 2012),

filed July 1, 2015 (Doc. 43-1)(the "Hays Affidavit"), in support of his application for a search

warrant of Armijo's property.[3]  The Honorable Kevin Sweazea, District Judge, Seventh Judicial

District, State of New Mexico, issued the search warrant on April 16, 2012.  See Hays Affidavit

at 5.  The following day, Hays and other officers entered Armijo's residence in tactical gear with

weapons drawn and executed the warrant.  See Complaint at 3.  The search recovered

approximately 22.21 ounces of marijuana, for which Armijo was subsequently arrested.  See

Complaint at 3-4; Return and Inventory at 1-2, 5, filed July 1, 2015 (Doc. 43-2).  That criminal

case is still pending.  See Criminal Docket for Case #: 1:14-po-00064-KBM-1, filed July 1, 2015

(Doc. 43-5).

## PROCEDURAL BACKGROUND

Armijo filed his Complaint on April 16, 2014, alleging claims against several

Defendants.  See Complaint at 1.  Relevant here, Armijo claims that Cearley violated his

constitutional rights by providing Hays with false information, which later became the basis for

the search warrant and seizure of Armijo's property.  See Complaint at 2.  Armijo alleges that, as

a result, the warrant was defective and unconstitutional, and seeks compensation for his injuries

---

[3]Pursuant to rule 56(c)(3), the Court need consider only the cited materials in a motion
for summary judgment, but may also consider other materials in the record.

under 42 U.S.C. § 1983.  See Complaint at 5.  Armijo also alleges claims under § 1983 against the Village of Magdalena as Cearley's employer.  See Complaint at 2, 3.

The Court referred this case to Judge Garza to perform legal analysis and recommend an ultimate disposition.  See Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases and Immigration Habeas Corpus Proceedings, filed May 23, 2014 (Doc. 4).  Cearley and the Village of Magdalena filed their MTD/MSJ and Judge Garza held a hearing on August 28, 2015.  See Clerk's Minutes at 2. Judge Garza also granted Hays and Defendant Robert Griego's State Defendants' Motion to Stay Discovery, filed July 22, 2015 (Doc. 55), and stayed discovery in this case on the basis that they had filed State Defendants' Motion to Dismiss or Alternatively Motion for Summary Judgment. See State Defendants' Motion to Dismiss or Alternatively, Motion for Summary Judgment, filed July 1, 2015 (Doc. 43); Order Staying Discovery, filed September 1, 2015 (Doc. 67).

Subsequently, construing Cearley and Village of Magdalena's MTD/MSJ as a motion for summary judgment, Judge Garza found that Armijo has not shown a genuine dispute of material fact whether Cearley violated his clearly established constitutional rights, and thus concluded that Cearley is entitled to qualified immunity.  See PFRD 7-11.  Judge Garza further concluded that, Armijo's claims against the Village of Magdalena also fail, as he has not demonstrated an underlying constitutional violation by Cearley.  See PFRD 11-12.  Accordingly, Judge Garza ultimately recommended that the Court grant Cearley and Village of Magdalena's MTD/MSJ and dismiss the claims against Cearley and Village of Magdalena with prejudice.

In his Objections, Armijo seeks relief from Judge Garza's PFRD under rule 60(b) of the Federal Rules of Civil Procedure.  Rule 60, however, is inapplicable at this stage.  Indeed, rule 60 provides relief from a final judgment, order, or proceeding.  See Fed. R. Civ. P. 60.  Here, the

Court has not issued a final judgment or order; rather, the Court is considering Judge Garza's PFRD.  As a result, the Court construes Armijo's request for relief under rule 60 as objections to the PFRD filed under rule 72(b) of the Federal Rules of Civil Procedure.[4]

Armijo objects to Judge Garza's findings on the basis that he has provided additional evidence supporting his claims with his Objections.  See Objections at 1-5.  Armijo also asks for more time to produce documents to the Court and to be able to conduct additional discovery.  See Objections at 3-5.  In response, Cearley makes the same arguments stated in his MTD/MSJ.  See Response at 1-14.  In addition, Cearley argues that, even considering Armijo's additional evidence, and viewing the facts in the light most favorable to Armijo, Armijo has made no showing that Cearley made deliberately false statements which were necessary to procure the search warrant.  See Response at 13.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a magistrate judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . .").  Rule 72(b)(2) governs objections: "Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Finally, when resolving objections to a magistrate judge's proposal, "the district judge must determine de novo any part

---

[4]In his filing, Armijo states that he is unsure whether it is appropriate to seek relief under rule 60 at this time.  See Objections at 5.  The Court acknowledges that where, as here, a party is proceeding pro se, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

of the magistrate judge's disposition that has been properly objected to.  The district judge may

accept, reject, or modify the recommended disposition; receive further evidence; or return the

matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C.

§ 636 provides:

> A judge of the court shall make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to which objection is
> made. A judge of the court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge.  The judge may also
> receive further evidence or recommit the matter to the magistrate judge with
> instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus

attention on those issues -- factual and legal -- that are at the heart of the parties' dispute."

United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements,

and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474

U.S. 140, 147 (1985)).  As the Tenth Circuit has noted, "the filing of objections advances the

interests that underlie the Magistrate's Act, including judicial efficiency."  One Parcel, 73 F.3d at

1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v.

Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The United States Court of Appeals for the Tenth Circuit held "that a party's objections

to the magistrate judge's report and recommendation must be both timely and specific to

preserve an issue for *de novo* review by the district court or for appellate review."  One Parcel,

73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth

Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the

failure to make timely objections to the magistrate's findings or recommendations waives

appellate review of both factual and legal questions.'"  One Parcel, 73 F.3d at 1059 (citations

omitted).  In addition to requiring specificity in objections, the Tenth Circuit has stated that

"[i]ssues raised for the first time in objections to the magistrate judge's recommendation are

deemed waived."  Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v.

Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first

time in objections to the magistrate judge's report are deemed waived.").  In an unpublished

opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had

waived [an] argument by failing to raise it before the magistrate."  Pevehouse v. Scibana, 229 F.

App'x 795, 796 (10th Cir. 2007)(unpublished).[5]

     In One Parcel, the Tenth Circuit, in accord with courts of appeals, expanded the waiver

rule to cover objections that are timely but too general.  See One Parcel, 73 F.3d at 1060.  The

Supreme Court of the United States -- in the course of approving the United States Court of

Appeals for the Sixth Circuit's use of the waiver rule -- has noted:

---

     [5]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an
unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See
10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited
for their persuasive value.").  The United States Court of Appeals for the Tenth Circuit has
stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its
> disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Pevehouse
v. Scibana and Wright v. City of St. Francis, KS, No. 02-3337, 95 F. App'x 915, 929 (10th Cir.
Apr. 20, 2004), Rhoads v. Miller, No. 08-8093, 352 F. App'x 289, 291 (10th Cir. Nov. 5, 2009),
United States v. Watson, No. 01-4258, 61 F. App'x 514, 518 (10th Cir. Feb. 5, 2003), and United
States v. Montgomery, No. 07-3069, 262 F. App'x 80, 84 (10th Cir. Jan. 10, 2008) have
persuasive value with respect to a material issue, and will assist the Court in its disposition of
this Memorandum Opinion and Order.

It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.  The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report.  See S.Rep. No. 94-625, pp. 9-10 (1976) (hereinafter Senate Report); H.R.Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report).  There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.  Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates.  Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time."  See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975) (emphasis added) (hereinafter Senate Hearings).  The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice.  See id., at 11 ("If any objections come in, . . . I review [the record] and decide it.  If no objections come in, I merely sign the magistrate's order.").  The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report.  See Senate Hearings, at 35, 37.  Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.  There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed.  It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort.  We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  One Parcel, 73 F.3d at 1060 (quoting

Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have

declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")(citations omitted). Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other circuits where district courts elected to address merits despite potential application of waiver rule, but circuit courts opted to enforce waiver rule).

Where no party objects to the magistrate judge's proposed findings and recommended disposition, the Court has, as a matter of course in the past and in the interests of justice, reviewed the magistrate judge's recommendations. In Workheiser v. City of Clovis, No. CIV 12-0485 JB/GBW, 2012 WL 6846401 (D.N.M. Dec. 28, 2012)(Browning, J.), where the plaintiff failed to respond to the magistrate judge's proposed findings and recommended disposition, although the Court determined that the plaintiff "has waived his opportunity for the Court to conduct review of the factual and legal findings in the [proposed findings and recommended disposition]," the Court nevertheless conducted such a review. 2012 WL 6846401, at *3. The Court generally does not, however, review the magistrate judge's proposed findings and recommended disposition de novo, and determine independently necessarily what it would do if the issues had come before the Court first, but rather adopts the proposed findings and recommended disposition where "[t]he Court cannot say that the Magistrate Judge's

recommendation . . . is clearly erroneous, arbitrary, [obviously][6] contrary to law, or an abuse of discretion."   Workheiser v. City of Clovis, 2012 WL 6846401, at *3.   This review, which is deferential to the magistrate judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the intent of the waiver rule than no review at all or a full-fledged review.   Accordingly, the Court considers this standard of review appropriate.   See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").   The Court is reluctant to have no review at all if its name is going to go at the bottom of the order adopting the magistrate judge's proposed findings and recommendations.

---

[6]The Court previously used as the standard for review when a party does not object to the magistrate judge's proposed findings and recommended disposition whether the recommendation was "clearly erroneous, arbitrary, contrary to law, or an abuse of discretion," thus omitting "obviously" in front of contrary to law.   Solomon v. Holder, CIV 12-1039 JB/LAM, 2013 WL 499300, at *4 (D.N.M. Jan. 31, 2013)(Browning J.)(adopting the recommendation to which there was no objection, stating: "The Court determines that the PFRD is not clearly erroneous, arbitrary, contrary to law, or an abuse of discretion, and accordingly adopts the recommendations therein"); O'Neill v. Jaramillo, CIV 11-0858 JB/GBW, 2013 WL 499521 (D.N.M. Jan. 31, 2013)(Browning, J.)("Having reviewed the PRFD under that standard, the Court cannot say that the Magistrate Judge's recommendation is clearly erroneous, arbitrary, contrary to law, or an abuse of discretion.   The Court thus adopts Judge Wormuth's PFRD.")(citing Workheiser v. City of Clovis, 2012 WL 6846401, at *3); Galloway v. JP Morgan Chase & Co., CIV 12-0625 JB/RHS, 2013 WL 503744 (D.N.M. Jan. 31, 2013)(Browning, J.)(adopting the magistrate judge's recommendations upon determining that they were not "clearly contrary to law, or an abuse of discretion.").   The Court does not believe that "contrary to law" accurately reflects the deferential standard of review that the Court intends to use when there is no objection.   Finding that a magistrate judge's recommendation is contrary to law would require the Court to analyze the magistrate judge's application of law to the facts or the magistrate judge's delineation of the facts -- in other words performing a de novo review, which is required when a party objects to the recommendations only.   The Court believes adding "obviously" better reflects that the Court is not performing a de novo review of the magistrate judges' recommendations.   Going forward, therefore, the Court will review magistrate judges' recommendations to which there are no objections for whether the recommendations are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.

## LAW REGARDING SUMMARY JUDGMENT

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of making a prima facie demonstration that there is no genuine issue of material fact.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  See Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1490 (10th Cir. 1995).

Where a defendant raises the defense of qualified immunity in a motion for summary judgment, the burden shifts to the plaintiff to meet a "heavy two-part burden."  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  First, a plaintiff must establish that the defendant's actions violated a constitutional or statutory right.  See Medina v. Cram, 252 F.3d at 1128 (internal citations and quotations omitted).  A plaintiff must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct.  See Medina v. Cram, 252 F.3d at 1128 (internal citations and quotations omitted).  "If a plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."  Medina, 252 F.3d at 1128 (citing Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995)).

## ANALYSIS

As an initial matter, Armijo's request for more discovery is not well-taken.  His argument that he requires more discovery in to support his claims is raised for the first time in his objections and is therefore deemed waived.  See Marshall, 75 F.3d at 1426.  See also United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for

the first time in objections to the magistrate judge's report are deemed waived.").  Indeed, in Plaintiffs Response to Defend[a]nts Motio[n] to Dismiss and Alternative Motion for Summ[a]ry Judgment Also Response to Failure to State a Claim, filed July 20, 2015 (Doc. 48)("Plaintiff's Response to MTD/MSJ"), Armijo does not request more time to conduct discovery.  Instead, he refers to several exhibits in support of his arguments.  See Plaintiff's Response to MTD/MSJ at 11-12.

Second, to the extent Armijo is asking for more time to produce relevant documents, the Court also denies this request.  Armijo has had a significant amount of time to provide the Court with materials supporting his claims.  Again, Armijo refers to several documents in his Plaintiff's Response to MTD/MSJ, which he filed on July 20, 2015.  See Plaintiff's Response to MTD/MSJ at 1-12.  In addition, Judge Garza notified Armijo that she would consider any documents he was unable to submit with Plaintiff's Response to MTD/MSJ at the hearing held on August 28, 2015.  See Order for Parties to Provide Exhibits at Motions Hearing, filed August 20, 2015 (Doc. 65).  Finally, Armijo attached additional evidence to his Objections, which he filed on September 28, 2015.

Lastly, Armijo has resubmitted corrected affidavits in support of his claims against Cearley.  See Affidavits of Montana Petiss and Clarice Armijo at 5-6, filed September 28, 2015 (Doc. 69-1)("Montana and Clarice Affidavits").  Cearley does not specifically object to the affidavits.[7]  Accordingly, the Court will now conduct a de novo review of Armijo's claims against Cearley in light of this new evidence.

---

[7]In his Response, Cearley mentions only that the affidavits that Armijo submitted with his Objections are "late," Response at 13, but does not otherwise object to their form or content.  It is well-settled that a district judge may consider new evidence when conducting a de novo review of a Magistrate Judge's recommendation.  See 28 U.S.C. § 636(b)(1).

## I.    <u>CEARLEY IS ENTITLED TO QUALIFIED IMMUNITY</u>.

As Judge Garza summarized, here, Armijo contends that Cearley, as Marshal for the Village of Magdalena, provided Hays with false information regarding Armijo's past statements and activities.  <u>See</u> Complaint at 2-3.  Cearley stated that Armijo had asked him whether he thought a power outage was a result of the lights which Armijo used to grow marijuana plants, that he observed traffic by known drug users in and out of Armijo's residence, and that Armijo's swamp cooler and air compressor ran throughout the year.  <u>See</u> Cearley Affidavit at 1-2.  Armijo argues that these statements are false, constitute perjury, and became the basis for Hays' application for a search warrant of Armijo's home and seizure of his property.  <u>See</u> Complaint at 2-3; Clerk's Minutes at 2.  Judge Garza construed Armijo's claim that Cearley's statements amounted to perjury as alleging that Cearley violated Armijo's right to be free from unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States.  <u>See</u> PFRD at 8.

As stated in the PFRD, while Cearley did not participate in obtaining or executing the search warrant, he may still be liable for Armijo's injuries resulting from the execution of the search warrant under the Fourth Amendment. Indeed, the Tenth Circuit has held that, when public officials

> engage[ ] in a deliberate course of conduct, complete with false information, designed to gain entry into a home, and when the false information was essential to persuade a judge to issue the order upon which the defendants relied in gaining entry into a home, those responsible for providing the false information may have violated the Fourth Amendment -- even though some of them had not entered the home themselves.

<u>Wright v. City of St. Francis, KS</u>, 95 F. App'x 915, 929 (10th Cir. 2004) (unpublished)(internal quotations citations omitted).

Where a plaintiff makes such allegations, and a defendant raises the defense of qualified immunity, the claim may survive qualified immunity if the plaintiff can "make a substantial showing of deliberate falsehood or reckless disregard for truth, such that would be needed to challenge the presumed validity of an affidavit supporting a search warrant under Franks v. Delaware, 438 U.S. 154, 171 (1978)." Snell v. Tunnell, 920 F.2d 673, 698 (10th Cir. 1990)(internal citations and quotations omitted).  "Likewise . . . there must be a specific affirmative showing of dishonesty by the applicant, i.e., knowledge of a plaintiff's innocence or that a witness was lying . . . . Equally important, a plaintiff must establish that, but for the dishonesty, the challenged action would not have occurred."  Snell v. Tunnell, 920 F.2d at 698.

A.   **ARMIJO HAS MADE A SUBSTANTIAL SHOWING OF DELIBERATE FALSEHOOD AS TO CEARLEY'S STATEMENTS THAT ARMIJO ASKED HIM WHETHER HE THOUGHT A POWER OUTAGE WAS A RESULT OF THE LIGHTS USED ON ARMIJO'S MARIJUANA PLANTS AND THAT ARMIJO HAD A MEDICAL MARIJUANA PLANT.**

The Court will first consider whether Armijo has made a substantial showing that Cearley provided a deliberate falsehood, or otherwise acted with reckless disregard for the truth, in providing false information regarding Armijo's activities to Hays.  Here, the parties do not dispute that Cearley contacted Hays with information that he believed suggested that marijuana was being grown and sold on Armijo's property. This information is summarized as follows: (i) at some point before the search of Armijo's property, Armijo called Cearley regarding a power outage in Magdalena and suggested that the lights which Armijo used for his marijuana plants caused the outage; (ii) Cearley believed that Armijo was known to have been involved in violations of the Controlled Substance Act, 21 U.S.C. § 801 to 971, and had observed a high volume of known drug users frequent Armijo's residence for only short periods of time; and (iii)

Armijo's home had a basement, and a swamp cooler and air compressor ran continually throughout the year, even during the winter months.  See Cearley Affidavit.

In his Objections, Armijo contends that the evidence presented shows that Cearley committed fraud by providing information to Hays, which violated Armijo's constitutional rights.  See Objections at 4.  Armijo generally states that all the information Cearley provided to Hays was false.  See Objections at 3-5.  In support of his claim, Armijo provides several affidavits that attempt to refute the statements which Cearley made to Hays.  See Montana and Clarice Affidavits at 1-6.  Cearley responds that, even viewing the facts in the light most favorable to Armijo and assuming that Cearley's statements were false, Armijo has made no showing that he made deliberately false statements which were necessary to procure the search warrant.  See Response at 7-9.

By way of evidence, Armijo first provides affidavits from two individuals, Cody Henderson and Montana Petiss, who state that they were present in the same room when Armijo called Cearley regarding the power outage in Magdalena.  See Montana and Clarice Affidavits at 3, 4.  Both affidavits state that, during the conversation with Cearley, Armijo did not make any mention of grow lights on marijuana plants, or state that he had a medical marijuana permit or marijuana.  See Montana and Clarice Affidavits at 3, 4.

In determining a motion for summary judgment based on qualified immunity, the Court construes the facts in the light most favorable to the plaintiff, which usually means that the Court "accept[s] the facts as the plaintiff alleges them . . . ."  Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).  Indeed, the Court adopts "'the plaintiff's version of the facts,' [ ] unless that version 'is so utterly discredited by the record that no reasonable jury could have believed him.'"  Rhoads v. Miller, No. 08-8093, 352 F. App'x 289, 291 (10th Cir. Nov. 5,

2009)(unpublished)(citing Scott v. Harris, 550 U.S. 372, 378, 380 (2007)).  Where the only evidence that contradicts the plaintiff's version of the facts is another witness' testimony, the question becomes one of reconciling inconsistent testimony or assessing credibility, which is a determination left to the jury.  See Allen v. Wal-Mart Stores, Inc., 241 F.3d 1293, 1297 (10th Cir. 2001)("The weighing of evidence, the reconciliation of inconsistent testimony, and the assessment of a witness' credibility is solely within the province of the jury.").

If the Court views the facts as Armijo alleges them, the Court assumes that Armijo did not mention grow lights on marijuana plants or a medical marijuana permit to Cearley during their telephone conversation.  The only evidence before the Court that discredits Armijo's version of the facts is Cearley's account of the conversation with Armijo as stated in his affidavit.  See Cearley Affidavit at 1.  There is no evidence that utterly discredits Armijo's version of the facts such that no reasonable jury could believe him.  Compare Rhoads v. Miller, 352 F. App'x at 291 (viewing facts plaintiff alleges them where the only contradicting evidence was testimony from other witnesses), with Scott v. Harris, 550 U.S. at 379 (rejecting the plaintiff's version of events where a videotape blatantly contradicted it).  As a result, the Court adopts Armijo's version of the facts.

In viewing the facts here as Armijo alleges them, the Court concludes that the allegations which Cearley asserts Armijo made are statements that Armijo, in fact, did not make, are sufficient to support a claim that Cearley's statements regarding that conversation to Hays "were fabricated and that [Cearley] knew that such allegations were untrue."  Snell v. Tunnell, 920 F.2d at 697-98.  Thus, Armijo has made a substantial showing that Cearley acted with a deliberate or reckless disregard for the truth as to his statements to Hays regarding their telephone conversation.

- 16 -

Second, Armijo attaches affidavits from two of his daughters, who lived in his home at some point during the relevant time period.  See Montana and Clarice Affidavits at 5-6.  Both daughters state that Armijo does not run the air conditioner or air compressor continuously.  See Montana and Clarice Affidavits at 5-6.  In addition, Armijo's daughter, Clarice Armijo, states that she and her family do not own a swamp cooler or have an air conditioner in the basement. See Montana and Clarice Affidavits at 5.  The facts as alleged by Armijo do not necessarily demonstrate that Cearley's statements were false, let alone that Cearley knew those statements were false.  The affidavits generally dispute that Armijo runs an air compressor or air conditioner continuously, that Armijo does not own a swamp cooler, and that there is no air conditioner in the basement; they provide no showing of a deliberate falsehood on the part of Cearley.  Indeed, "[a]llegations of negligence or innocent mistake are insufficient" to constitute allegations of deliberate falsehood.  Franks v. Delaware, 438 U.S. at 171.

Finally, Armijo generally references Cearley's past acts, which he contends indicate that Cearley has a reputation of lying.  See Objections at 3-4.  Armijo does not support these allegations with any evidence.  See Objections at 3-4.  Moreover, Armijo's general references and allegations of past fraud, even if assumed true, do not show that Cearley knew that the information he provided Hays was false.  The conduct to which Armijo references does not pertain to this case.  See United States v. Williams, 576 F.3d 1149, 1162 (10th Cir. 2009)(holding that an officer's past alleged misconduct did not pertain to the case at issue and did not otherwise allow the court to infer that the officer included a false statement deliberately or recklessly in the warrant affidavit).

In sum, the Court finds that Armijo has made a substantial showing of deliberate falsehood as to Cearley's statements that Armijo asked him whether he thought a power outage

was a result of the lights used on Armijo's marijuana plants and that Armijo had a medical marijuana permit.  Thus, the Court finds that Armijo has created a genuine dispute of material fact whether Cearley provided Hays with a deliberate falsehood as to Armijo's statement as to grow lights, marijuana plants, and a medical marijuana permit.  Armijo has not, however, made a substantial showing of deliberate falsehood as to any of Cearley's other statements.

### B.   CEARLEY'S DELIBERATELY FALSE STATEMENTS WERE NOT ESSENTIAL TO FIND PROBABLE CAUSE TO ISSUE THE SEARCH WARRANT.

The Court now turns to whether Cearley's deliberate falsehoods were essential to persuade Judge Sweazea to issue the search warrant.  Snell v. Tunnell, 920 F.2d 698-99.  This task requires the Court to determine whether the challenged statements were necessary for a finding of probable cause, thereby providing the authority to issue the search warrant.  See United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997).

Probable cause exists where, "given all the circumstances set forth in the affidavit before [the judge], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  Indeed, "probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules."  United States v. Watson, No. 01-4258, 61 F. App'x 514, 518 (10th Cir. Feb. 5, 2003)(unpublished)(citing Illinois v. Gates, 462 U.S. at 232).  "In assessing whether the warrant was based on probable cause, we do not view each supporting fact or episode in isolation.  While one fact alone may not support a finding of probable cause, a cumulative assessment may indeed lead to that conclusion."  United States v. Cantu, 405 F.3d 1173, 1177 (10th Cir. 2005).

Aside from Cearley's statements regarding the conversation with Armijo during the power outage, the Hays Affidavit in support of his application for a search warrant provides the following information: (i) Armijo resides at 202 Third Street in Magdalena with his wife and daughter; (ii) Cearley stated that Armijo is known to law enforcement as an individual who has been involved in violations of the Controlled Substance Act; (iii) Cearley has observed known drug users from Magdalena frequent Armijo's residence, that there is often a high volume of traffic in and out of the residence for short periods of time; (iv) Cearley stated that Armijo's residence is approximately 1400 square feet, and that it has a basement, and that Armijo has a swamp cooler and air compressor which run continuously through the year; (vi) New Mexico State Police Patrolman Steven Carter received information from a confidential source that, sometime in late 2010 or early 2011, Armijo was growing approximately 100 marijuana plants in his basement at 202 Third Street, and that the confidential source had seen these plants on various occasions; and (vii) Socorro Electric Cooperative records indicate that the average monthly kilowatt usage at 202 Third Street from May 2011 through March 2012 was approximately 890 kilowatt hours of electricity, with a high of 1785 kilowatt hours during the month of August, whereas other residences similar in size and occupancy averaged 580 kilowatt hours per month. Considering all the information provided in the affidavit and the totality of the circumstances, the Court concludes, for the reasons stated below, that the Hays Affidavit stated sufficient probable cause to issue the warrant.

Although the statement from the confidential informant was provided approximately one year to one-and-a-half years before Judge Sweazea issued the search warrant in this case, the

Court does not find this information to be stale.[8]  "Whether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."  United States v. Burkhart, 602 F.3d 1202, 1206 (10th Cir. 2010).  Indeed, the passage of time alone does necessarily demonstrate the staleness of an informant's statements.  United States v. Mathis, 357 F.3d 1200, 1207 (10th Cir. 2004).  Here, Armijo was under suspicion for having a marijuana growing operation, and for trafficking and distributing large marijuana amounts.  See Hays Affidavit at 1.  "A marijuana growing operation, which is a long-term operation, may allow for greater lapses of time between the information relied upon and the request for a search warrant."  United States v. Thomas, 605 F.3d 300, 307-11 (6th Cir. 2010)(citing United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991)).  In addition, Armijo was alleged to have run that operation from the same residence where the confidential informant had previously seen the marijuana plants.  See Hays Affidavit at 2. United States v. Cantu, 405 F.3d at 1178 (explaining that the similarity between circumstances of allegedly stale information and of current suspicious activity refreshed the stale information).

Moreover, other information in the Hays Affidavit corroborates the confidential informant's statements, and "otherwise stale information may be refreshed by more recent events."  United States v. Cantu, 405 F.3d at 1177-78.  The Hays Affidavit also includes information from Cearley, who stated that, during the months immediately preceding the application for the search warrant, he had observed known drug users frequent Armijo's residence for short periods of time, suggesting that they were engaging in drug transactions.  See Hays Affidavit at 2, 3.  Cearley also stated that he observed Armijo run his swamp cooler and air

---

[8]Although Armijo has not raised this specific argument here, he has done so elsewhere in the record of this case.  See Clerk's Minutes at 3.

compressor at high rates and during winter months, which is consistent with a marijuana growing operation.  See Hays Affidavit at 2, 3.

The Hays Affidavit further corroborated Cearley's statements by including electricity records of Armijo's residence from May, 2011, through March, 2012, linking the informant's statements in late 2010 or in early 2011 to the search in April, 2012.  As stated in the Hays Affidavit, the electricity records reflect that the average monthly kilowatt usage at Armijo's residence during that time was approximately 890 kilowatt hours of electricity, while residences of similar size and occupancy on the same street averaged 580 kilowatt hours of electricity per month.  See Hays Affidavit at 3.  Hays explained that this usage was consistent with electricity required for an indoor marijuana plantation.  See Hays Affidavit at 3.  Courts have recognized the relevance of electricity records to probable-cause determinations for marijuana growing operations.  See United States v. Cusumano, 83 F.3d 1247, 1249, 1250 (10th Cir. 1996)(relying in part on power company reports indicating the residence was consuming twice the amount of electricity as similar structures in the area in making probable cause determination); United States v. Montgomery, No. 07-3069, 262 F. App'x 80, 84 (10th Cir. Jan. 10, 2008)(unpublished)(explaining that the fact that residence was consuming electricity at a significantly higher rate than two comparable houses in neighborhood supported probable-cause finding); United States v. Thomas, 605 F.3d at 310-11 (finding that utility records which showed higher electricity bills compared to other neighboring properties refreshed an informant's tip and contributed to finding of probable cause); United States v. Kattaria, 553 F.3d 1171, 1176 (8th Cir. 2009)(relying on electric records that showed recent, abnormally high electric power consumption consistent with the indoor cultivation of marijuana to compensate for lack of confidential source's reliability and to find probable cause).

This corroborating information also compensates for any lack of reliability attributed to the confidential informant.  Indeed, "[v]eracity and basis of knowledge are not [ ] rigid and immovable requirements in the finding of probable cause.  A deficiency in one element may be compensated for 'by a strong showing as to the other, or by some other indicia of reliability.'" United States v. Corral, 970 F.2d 719, 727 (10th Cir. 1992)(citing Illinois v. Gates, 462 U.S. at 233).  As a result, "there is no need for a declaration of reliability of an informant when the informant's information is corroborated by other information."   United States v. Sturmoski, 971 F.2d 452, 457-58 (10th Cir. 1992)(citing United States v. Harris, 403 U.S. 573 (1971)).  See United States v. Kattaria, 553 F.3d at 1176.

The Court is satisfied that, after considering the information in the Hays Affidavit, even after omitting Cearley's statements regarding Armijo's comments during the power outage, there was sufficient probable cause to issue the search warrant for Armijo's property.  See United States v. Rutherford, 824 F.2d 831, 835 (10th Cir. 1987)(holding that anonymous tip by informant who stated that his daughter visited a house in question and viewed large quantities of illegal drugs, combined with the defendant's exit from that house with a bag and the fact that he sped away when a police car approached, provided probable cause to search defendant's car).

As a result, the Court finds that Cearley's statements, were not essential for a finding of probable cause.  Armijo has not shown that, but for Cearley's dishonesty, the search warrant would not have issued.  Snell v. Tunnell, 920 F.2d at 698.  Thus, Armijo has not demonstrated that Cearley violated his clearly established rights, and therefore the Court finds that Cearley is entitled to qualified immunity.  Ultimately, even considering Armijo's additional evidence, the Court agrees with Judge Garza.

**IT IS ORDERED** that the Court will adopt the Magistrate Judge's recommendations in the Proposed Findings and Recommended Disposition, filed September 11, 2015 (Doc. 68) ("PFRD").  Defendant Cearley and Village of Magdalena's Motion to Dismiss and Alternative Motion for Summary Judgment, filed June 18, 2015 (Doc. 39)("MTD/MSJ"), is granted and the claims against Defendants Larry Cearley and Village of Magdalena are dismissed with prejudice.


_____
UNITED STATES DISTRICT JUDGE


*Parties and Counsel:*

Simon Armijo
Magdalena, New Mexico

 *Plaintiff pro se*

Douglas E. Gardner
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

 *Attorney for Defendants Rony D. Hays and Robert Griego*

James P. Lyle
Law Offices of James P. Lyle P.C.
Albuquerque, New Mexico

 *Attorneys for Defendants Larry Cearly and Village of Magdalena*