IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SIMON ARMIJO,

    Plaintiff,

v.                                                                 CV No. 2:14-00362 JB/CG

RONY D. HAYES, et al.,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Defendant Robert Griego's *Motion for Summary Judgment on the Basis of Qualified Immunity* (the "Motion"), (Doc. 98), filed November 1, 2016; *Plaintiff's Opposition and Response to Defendant Griego's Motion for Summary Judgment on the Basis of Qualified Immunity* (the "Response"), (Doc. 99), filed November 15, 2016; and Defendant Griego's *Reply in Support of Motion for Summary Judgment on the Basis of Qualified Immunity* (the "Reply"), (Doc. 100), filed December 2, 2016. United States District Judge James O. Browning referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 4). Having considered the parties' filings and the relevant law, the Court **RECOMMENDS** that Defendant Griego's Motion be **GRANTED** and all claims against him be **DISMISSED WITH PREJUDICE**.

    **I.**     **Background**

This case arises out of Defendants' search and seizure of Plaintiff's property. On April 17, 2012, Defendant Rony Hays executed a search warrant on Plaintiff's property. (Doc. 2 at 3). The search warrant authorized Defendant Hays to search for evidence of trafficking of a controlled substance, namely marijuana. (Doc. 43-1 at 1-3, 5). Defendant

Hays seized numerous items under the warrant, including approximately 22 ounces of marijuana. (Doc. 43-2 at 7-8).

While executing the search warrant, Defendant Hays found several deer heads, various deer parts, and a deer carcass in a shed. (Doc. 43-2 at 10). Defendant Hays observed that several of the deer heads had carcass tags on them, but some did not, and he did not see any carcass tag on the deer carcass. (Doc. 43-2 at 10). Suspicious about the various deer parts and their lack of identifying paperwork, Defendant Hays contacted Defendant Robert Griego, an officer employed by the New Mexico Department of Game and Fish ("NMDGF").

Defendant Griego arrived at Plaintiff's property twenty minutes after being called. (Doc. 43-2 at 11). When Defendant Griego arrived at the property, Plaintiff told Defendant Griego that he needed his own search warrant to search Plaintiff's property. (Doc. 2 at 7; Doc. 98 at 7).[1] Defendant Griego ignored Plaintiff and continued onto the property to join the officers at the shed. (Doc. 2 at 7; Doc. 98 at 7). Defendant Griego states he saw 15 to 20 deer heads on the floor of the shed, along with a deer carcass that was sawn in half. (Doc. 43-2 at 11). When asked about all the deer heads, Plaintiff told Defendant Griego he was a good hunter. (Doc. 43-2 at 11). Defendant Griego asked Plaintiff if he kept deer meat as well, to which Plaintiff responded that he did and that Defendant Griego could look at it if he wanted to. (Doc. 43-2 at 11).

When asked about the carcass, Plaintiff represented that one of the tagged deer heads belonged to the carcass and that he killed said deer in November, 2011, on a private ranch. (Doc. 43-2 at 11). The tag on the identified deer head indicated that the

---

[1] Doc. 2 is Plaintiff's *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983* (the "Complaint"). Plaintiff's Complaint is verified, (Doc. 2 at 6), therefore it may be considered as an affidavit for purposes of summary judgment. *Conway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988).

2

deer was killed on November 26 or 27, 2011. (Doc. 43-2 at 11). Defendant Griego looked up 2011 deer hunt dates and noted that the only dates Plaintiff could have lawfully killed the deer were November 5-9 or 12-16, 2011. (Doc. 43-2 at 11). Defendant Griego then began walking to the front of the property, where Plaintiff again told him he needed a warrant; Defendant Griego responded he would obtain a warrant immediately. (Doc. 43-2 at 11).

Based on his observations and his conversation with Plaintiff, Defendant Griego applied for a warrant, stating he had reason to believe that Plaintiff was concealing: (1) unlawfully possessed Mule Deer heads; (2) unlawfully possessed game meat; (3) photographs of unlawfully killed game animals; and (4) instruments used to process big game. (Doc. 43-2 at 10). Defendant Griego swore that, based on his experience: (1) individuals who illegally kill big game keep the heads and antlers; (2) these individuals often reuse game tags to make their kills appear legitimate; (3) game blood and hair do not last long outdoors; and (4) that individuals who kill big game illegally photograph their kills in the field. (Doc. 43-2 at 11). Defendant Griego obtained and executed a search warrant the same day, seizing numerous deer heads, parts, and meat, along with elk meat, a golden eagle carcass, and red-tailed hawk feathers. (Doc. 43-2 at 8, 13). Plaintiff was later arrested and charged by the United States Fish and Wildlife Service for his possession of the golden eagle carcass and red-tailed hawk feathers. (Doc. 43-3 at 3).

Following the searches and seizures, Plaintiff filed a *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983* (the "Complaint"). Plaintiff raised several claims, all of which were previously dismissed except one currently before the Court. (*See* Docs. 76,

3

77). Plaintiff's only remaining claim is that Defendant Griego violated his Fourth Amendment rights. (Doc. 2 at 7-9). The Court previously recommended denying summary judgment in Defendant Griego's favor. (Doc. 71 at 27-31). The Court found that there was a genuine dispute of material fact as to whether Defendant Griego searched Plaintiff's property without a warrant or Plaintiff's consent, (Doc. 71 at 29-30), and that the law was clearly established that searches violate the Fourth Amendment when conducted without a warrant or an exception to the warrant requirement. (Doc. 71 at 30-31).

     Defendant Griego then filed the instant Motion. Defendant Griego concedes for purposes of the Motion that he entered Plaintiff's property without Plaintiff's consent and argues he is entitled to judgment as a matter of law regardless. First, Defendant Griego argues that his conduct before obtaining a warrant was not a search within the meaning of the Fourth Amendment because his conduct falls within the plain-view exception to the warrant requirement. (Doc. 98 at 14-16). Defendant Griego asserts that he was lawfully present on Plaintiff's property because he was also authorized under state law to execute the original search warrant, and he only observed evidence in plain view. (Doc. 98 at 14-16). Even if his conduct did constitute a search, Defendant Griego contends the search did not violate the Fourth Amendment, as it was authorized by the warrant obtained by Officer Hays. (Doc. 98 at 17-19). Finally, even assuming Defendant Griego's conduct did violate Plaintiff's Fourth Amendment rights, Defendant Griego argues that he is entitled to qualified immunity. (Doc. 98 at 20). As for his conduct after obtaining the warrant, Defendant Griego argues that he is entitled to qualified immunity because he acted pursuant to a facially valid warrant. (Doc. 98 at 20-25).

Plaintiff timely responded to Defendant Griego's Motion. (Doc. 99). Although Plaintiff disputes a number of facts as set forth in the Motion and described above, Plaintiff does not refer to affidavits or other portions of the record. (Doc. 99 at 3-9). For instance, Plaintiff states he does not recall any conversation with Defendant Griego, but Plaintiff does not attach an affidavit denying the conversation occurred. (Doc. 99 at 8). Plaintiff reiterates his argument that Defendant Griego's presence and actions before obtaining a warrant violated the Fourth Amendment. (Doc. 99 at 4-5). Plaintiff also reiterates his previous allegations that Defendant Griego falsified information in order to obtain a search warrant. (Doc. 99 at 5-6). Plaintiff argues that the instant case is nearly identical to *State v. Moran*, 2008-NMCA-160, 145 N.M. 297, 197 P.3d 1079, where the New Mexico Court of Appeals suppressed evidence of seized game animal parts. In *Moran*, the Court of Appeals held that an NMDGF officer violated the Fourth Amendment by searching a residence and seizing game animal parts without a warrant or the homeowner's consent. *Moran*, 2008-NMCA-160, ¶¶ 3, 13-14. Thus, Plaintiff argues, *Moran* clearly established his Fourth Amendment right, and Defendant Griego is not entitled to summary judgment in his favor. (Doc. 99 at 12).

## II.     Analysis

### a.  Legal Standards for Summary Judgment and Qualified Immunity.

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden of making a *prima facie* demonstration that there is no genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986)). A fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). An issue is genuine if a reasonable jury could resolve the issue in favor of the nonmoving party based on the evidence in the record. *Id.* In order to create a genuine issue of fact, the nonmoving party must provide admissible evidence, which the Court views in the light most favorable to him. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995). Admissible evidence includes reference to affidavits, depositions, or specific exhibits. *See Adler*, 144 F.3d at 671; FED. R. CIV. P. 56(c).

When a defendant has moved for summary judgment on the basis of qualified immunity, the inquiries are: (1) whether the plaintiff has demonstrated a violation of a constitutional right; and (2) whether that right was clearly established at the time the right was allegedly violated. *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009). The Court may exercise its discretion in deciding which of the two inquiries to address first. *Id.* at 236.

A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 123 S. Ct. 2088, 2093 (2012). A right may be clearly established by either "a Supreme Court or Tenth Circuit decision on point" or the "weight of authority from other courts." *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). A plaintiff need not provide a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted).

6

The Supreme Court has repeatedly cautioned against defining a clearly established right "at a high level of generality." *Id.* at 142. "The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742) (emphasis in original). "[S]pecificity is especially important" in cases implicating the Fourth Amendment, as "'[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

### b. Whether Defendant Griego is entitled to Summary Judgment regarding his pre-warrant conduct

In his Response, Plaintiff responds to and disputes a number of facts as relayed in Defendant Griego's Motion. (Doc. 99 at 3-9). However, Plaintiff does not reference affidavits, depositions, or other portions of the record in accordance with Federal Rule of Civil Procedure 56(c). (*See* Doc. 99 at 3-9). Rather, Plaintiff cites exhibits that he did not attach to his Response. (Doc. 99 at 5, 8). Because Plaintiff has not supported his assertions of fact with admissible evidence, the Court finds that there is no genuine issue of material fact.

Regarding whether Defendant Griego is entitled to judgment as a matter of law on qualified immunity grounds, the Court will analyze whether Plaintiff's rights were clearly established first. As a general proposition, it is clearly established that warrantless searches and seizures violate the Fourth Amendment. *See United States v. Davis*, 290 F.3d 1239, 1242 (10th Cir. 2002) ("With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no.") (citations omitted). However, Plaintiff has not provided, nor has the

7

Court been able to find, any Tenth Circuit or Supreme Court case that concludes Defendant Griego's particular conduct violates the Fourth Amendment. The Supreme Court has held "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant." *Wilson v. Layne*, 526 U.S. 603, 614 (1999). However, in *Wilson*, police officers invited a media crew to film the execution of an arrest warrant. *Id.* at 605-609. That scenario is distinct from the circumstances here, where a state police officer requested the assistance of another state police officer in identifying suspicious items found during the execution of a search warrant. Thus, the "violative nature" of Defendant Griego's "particular conduct" has not been clearly established by Supreme Court or Tenth Circuit precedent.

Plaintiff cites *State v. Moran*, 2008-NMCA-160, in support of his argument that Defendant Griego violated his clearly established constitutional rights. (Doc. 99 at 9-12). In *Moran*, sheriffs executed a search warrant of a home looking for evidence of criminal sexual penetration. *Moran*, 2008-NMCA-160, ¶ 3. During the search, a sheriff became suspicious about animal skulls and antlers on display in and around the home. *Id.* Eventually, the sheriff called an NMDGF officer to the scene, and the officer searched the home and seized a number of game animal items without a warrant. *Id.* In the resulting criminal case, the homeowner moved to suppress all evidence the NMDGF officer seized, arguing the officer's warrantless search and seizure violated the Fourth Amendment. *Id.*, ¶ 4. The New Mexico Court of Appeals agreed, holding that the NMDGF officer violated the homeowner's Fourth Amendment rights by entering the

home, searching the home, and seizing property, all without a warrant. *Id.*, ¶¶ 9, 13-14. Specifically, the Court of Appeals held the NMDGF officer was not legally present in the home even after he was invited onto the property by the sheriff. *Id.*, ¶¶ 12-14.

Indeed, *Moran* is factually similar to this case. In both circumstances, police officers executed a search warrant looking for evidence of a particular crime. In the course of their searches, the officers executing the warrant became suspicious about game animal parts and called an NMDGF officer for assistance. Both here and in *Moran*, the NMDGF officer entered the property under the authority of a search warrant that did not authorize officers to search and seize evidence of crimes related to game animal parts. The only potentially material difference is that Defendant Griego obtained a warrant before seizing Plaintiff's property.

Although *Moran* is factually similar to this case, *Moran* does not establish that Defendant Griego violated a clearly established right. As stated, one way to show a clearly established right is to provide a Supreme Court or Tenth Circuit Court of Appeals opinion on point. *Medina*, 960 F.2d at 1498. The New Mexico Court of Appeals is neither the Tenth Circuit nor the Supreme Court, so its decisions do not clearly establish a right on their own. The second way to demonstrate a clearly established right is through the weight of authority from other courts. *Id.* However, one state court of appeals decision does not establish the weight of authority from other courts. *See Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990) (finding clearly established right through the weight of authority of six different circuit courts of appeals' decisions). Despite the factual similarity to *Moran*, it is not "beyond debate" that Defendant Griego violated Plaintiff's Fourth Amendment rights. *al-Kidd*, 563 U.S. at 741. Because Plaintiff

has failed to show that Defendant Griego violated a clearly established right, Defendant Griego is entitled to qualified immunity regarding his initial conduct on Plaintiff's property.

### c. Whether Defendant Griego is entitled to Summary Judgment regarding his post-warrant conduct.

Defendant Griego argues he is entitled to summary judgment on any claims arising from his conduct following acquiring a warrant because the warrant was facially valid. (Doc. 98 at 20). Further, Defendant Griego argues that even if his subsequent search and seizure violated Plaintiff's constitutional rights, Defendant Griego is still entitled to qualified immunity. (Doc. 98 at 21, 25). Liberally construed, Plaintiff responds that Defendant Griego's search warrant was invalid because Defendant Griego falsified information to obtain the warrant.[2] (Doc. 99 at 6). Plaintiff bases this argument on two premises: Plaintiff has not been convicted of illegally possessing deer parts, and the search did not result in the seizure of some items named in the search warrant. (Doc. 99 at 6).

Plaintiff's argument mirrors his previous argument regarding Defendant Hays' search warrant, which the Court rejected. (Doc. 71 at 15-17). Here, as before, Plaintiff does not dispute that Defendant Griego's warrant contains sufficient information to establish probable cause; rather, Plaintiff alleges that Defendant Griego lied to secure the warrant. (*See* Docs. 71 at 15; 99 at 6). As explained previously, Plaintiff must "make a substantial showing of deliberate falsehood or reckless disregard for the truth, such that would be needed to challenge the presumed validity of an affidavit supporting a search warrant." *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990). Plaintiff must

---

[2] A *pro se* litigant's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

make "a specific affirmative showing of dishonesty by the applicant, i.e. knowledge of [Plaintiff's] innocence or that a witness was lying." *Id.*

First, Plaintiff argues Defendant Griego must have falsified facts because Plaintiff has not been convicted of illegally possessing deer heads or deer meat. (Doc. 99 at 6). Plaintiff's argument does not logically follow; just because he has not been convicted of illegal possession of deer heads or meat does not mean Defendant Griego was deliberately dishonest or acted with reckless disregard for the truth when he applied to search for illegally held deer heads and meat. Plaintiff must make a substantial showing that Defendant Griego was deliberately dishonest in swearing he believed Plaintiff was concealing unlawfully possessed deer heads and meat. *See Snell*, 920 F.2d at 698. Plaintiff has yet to do so.

Second, Plaintiff contends that Defendant Griego falsified facts because the search did not result in the seizure of photographs of unlawful kills or "implements used to process big game." (Doc. 99 at 6).  Plaintiff's argument appears to be based on a misapprehension of what Defendant Griego swore to in his affidavit. Defendant Griego did not swear that Plaintiff was concealing photographs of unlawful kills or implements used in processing big game. Rather, Defendant Griego swore that he "ha[d] reason to believe" that Plaintiff was concealing the photographs and implements. (Doc. 43-2 at 10). In support of that belief, Defendant Griego swore that, in his experience, it is common for poachers to keep heads and antlers, which Plaintiff did, and that it is common for such individuals to also keep photographs of their kills. (Doc. 43-2 at 11). Plaintiff does not provide any evidence showing Defendant Griego was deliberately

11

false or dishonest in stating his belief and experiences. Accordingly, Plaintiff has failed to establish Defendant Griego falsified information in order to obtain the search warrant.

Finally, even assuming Defendant Griego violated Plaintiff's Fourth Amendment rights after he obtained the search warrant, Plaintiff has not provided case law establishing Defendant Griego violated Plaintiff's clearly established rights. Here, as before, Plaintiff has not shown it was clearly established that a state law enforcement officer violates the Fourth Amendment by entering a property at the invitation of another state law enforcement officer executing a valid search warrant, observing evidence, obtaining a different search warrant based on those observations, and then returning and executing the search warrant. Thus, even if Defendant Griego violated the Fourth Amendment after he obtained a search warrant, he is still entitled to qualified immunity.

### III.    Conclusion

For the foregoing reasons, Plaintiff has not established a genuine dispute as to a material fact, and Defendant is entitled to judgment as a matter of law on qualified immunity grounds. **IT IS THEREFORE RECOMMENDED** that Defendant Griego's *Motion for Summary Judgment on the Basis of Qualified Immunity* be **GRANTED** and all claims against Defendant Griego be **DISMISSED WITH PREJUDICE**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE